UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

In re

    James I. Wynn, Sr.,                     Case No.: 13-20304
                                                           Chapter 13
                   Debtor.

**DECISION AND ORDER
CONVERTING CHAPTER 13 CASE TO
CHAPTER 7 PROCEEDING**

PAUL R. WARREN, United States Bankruptcy Judge

      The Chapter 13 Trustee ("Trustee") moved to dismiss this case for cause under 11 U.S.C. § 1307(c)(1), alleging unreasonable delay that has been prejudicial to creditors. (ECF No. 227). Tower Capital Management, LLC ("Tower") and Cheswold TL, LLC ("Cheswold"), the holders of tax liens on certain of Mr. Wynn's real estate holdings, joined in support of the Trustee's motion to dismiss. (ECF Nos. 257, 258). The Trustee amended his motion on July 25, 2017 to seek dismissal also under 11 U.S.C. § 1307(c)(6). (ECF No. 279). The Trustee additionally requested that the Court prohibit Mr. Wynn from filing further pleadings without leave of the Court. (*Id.*). The basis for the Trustee's amended motion was that the confirmed Chapter 13 plan included a provision requiring Mr. Wynn to sell two pieces of real estates and turn over the net proceeds of sale to the Trustee, by January 6, 2017—and that material term of the plan had been breached. (*See* ECF No. 136).

      Mr. Wynn (a *pro se* Chapter 13 debtor) filed a series of responses to the Trustee's motion, as well as a number of repetitive cross-motions alleging that a conspiracy was afoot to prevent the sale of his properties, as a pretext that would lead to conversion or dismissal of his case. (*See* ECF Nos. 230, 231, 232, 245, 246, 255, 256, 260, 267, 273, 280, 281). Much of the relief demanded

by Mr. Wynn in his cross-motions—such as expunging tax liens without payment—is without any authority under the Bankruptcy Code. And his allegations of a conspiracy against him, while doubtlessly genuine through his eyes, have no basis in fact, and no evidence is offered in support. On July 25, 2017, Mr. Wynn filed another cross-motion, seeking to amend his plan and schedules, and requesting an additional two years to sell the real property, expungement of tax liens, and a change of venue. (ECF No. 280).

The Trustee's motion to dismiss did not mention conversion as an alternative form of relief, although 11 U.S.C. § 1307(c) vests the Court with the discretion to order conversion or dismissal for cause. To ensure that Mr. Wynn had notice that the Court intended to consider *both* conversion to Chapter 7 *and* dismissal at the hearing on the Trustee's motion, and to give the parties a full and fair opportunity to be heard, the Court issued an Order to Show Cause on July 14, 2017 rescheduling the hearing on the competing motions. (ECF No. 274). And on July 26, 2017, Mr. Wynn filed yet another pleading, this time objecting to the issuance of the Order to Show Cause. (ECF No. 281). The most recent submission repeats the claims made by Mr. Wynn in his earlier submissions. (*See id.*). The Court held the hearing on the Court's Order to Show Cause, the Trustee's motion, and Mr. Wynn's cross-motions on July 27, 2017.

On the record before the Court and after hearing the arguments of the Trustee and Mr. Wynn—particularly Mr. Wynn's repeated request that the Court approve the contract for sale of 38-40 Elmdorf Avenue in Rochester, but only on terms dictated by Mr. Wynn (such as free and clear of tax liens in a matter not permitted by the Code)—the Court finds that there is cause to convert or dismiss this case under 11 U.S.C. § 1307(c)(1) and (c)(6), specifically, and under 11 U.S.C. § 1307(c), generally. Mr. Wynn's confirmed Chapter 13 plan is a "sale plan," but he has been unable and unwilling to abide by the terms of his plan. And despite Mr. Wynn's claims that

the sale contracts are both ready to go forward, those contracts have numerous contingencies that Mr. Wynn appears unable to satisfy—or may have already failed to satisfy within the time specified in the contracts—at least if this case continues on its present course. The best interests of creditors and the Estate would be served by conversion of this case to a Chapter 7 proceeding, not by dismissal. A Chapter 7 Trustee may be able to bring about a sale of the Elmdorf Avenue and Lake Avenue properties and ensure that the interests of Mr. Wynn (in surplus equity) and creditors (in receiving payment in the manner required by the Code) are protected. Additionally, an independent Chapter 7 Trustee, with experience in selling estate assets to maximize recovery, is better suited than Mr. Wynn to get these properties sold or to determine that they are not worth selling.

This case is **CONVERTED** to a Chapter 7 proceeding, for cause under 11 U.S.C. § 1307(c)(1), (c)(6), and for cause generally under 11 U.S.C. § 1307(c), because Mr. Wynn has demonstrated an inability both to comply with the terms of his confirmed plan and to effectively carry out the duties required of a debtor-in-possession under Chapter 13 of the Code. The various cross-motions of Mr. Wynn are **DENIED** in all respects. The Chapter 13 Trustee's request that the Court prohibit Mr. Wynn from filing further documents without leave of the Court is **DENIED**.

## I.

## JURISDICTION

The Court has jurisdiction under 28 U.S.C. §§ 157(a), 157(b)(1), and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). This decision memorializes the Court's findings of fact and conclusions of law, as required by Rule 7052 FRBP, based on the record before the Court, made applicable to this proceeding by Rules 9014 and 1017 FRBP.

## II.

## FINDINGS OF FACT

Mr. Wynn commenced this Chapter 13 case on February 27, 2013, by filing a bare-bones petition. (ECF No. 1). At the time of filing, Mr. Wynn was represented by William Rieth, Esq., an experienced Chapter 13 practitioner. (*See* ECF No. 1). The case was filed to stop a scheduled foreclosure sale of Mr. Wynn's rental property on Lake Avenue in Rochester, by a creditor (ATF) that had purchased tax liens against the property. (*See* ECF No. 14, Statement of Financial Affairs ¶ 4). Statements, schedules, and a Chapter 13 plan were filed on behalf of Mr. Wynn, within the time required by the Court. (ECF Nos. 13, 14, 15, 16, 18). Those schedules indicated that Mr. Wynn had failed to pay property taxes for a number of years. The Chapter 13 plan provided that Mr. Wynn would pay $2,000 each month to the Chapter 13 Trustee, for 36 months. (ECF No. 15). The plan also provided that he would sell the Elmdorf Avenue and Lake Avenue properties within that 36 month period, with the net proceeds (after payment of liens and encumbrances) to be paid to the Trustee for distribution to any remaining unsecured claims. (*Id.*).

On April 2, 2013, Mr. Wynn's attorney moved to withdraw. (ECF No. 28). The withdrawal was requested as a result of statements Mr. Wynn made during his § 341 meeting earlier that same day. (*Id.*). In what would prove to be the first of many rambling submissions over the course of the next four years, Mr. Wynn submitted a reply to the motion to withdraw. (ECF No. 31). Mr. Wynn consented to his attorney's request to withdraw, while leveling many charges against his attorney—alleging a grand conspiracy orchestrated to cause Mr. Wynn to lose title to his real estate holdings. (*See id.*). Mr. Wynn also demanded that the Court appoint an attorney to represent him. (*Id.*). During the hearing held on the motion, Mr. Wynn affirmatively consented to his attorney's request to withdraw. (*See* ECF No. 33). The Court advised Mr. Wynn

4

that it was not possible for the Court to provide appointed counsel to represent him. (*Id.*). The Court granted the attorney's request to withdraw. (ECF No. 35). From that point forward, Mr. Wynn proceeded as a *pro se* Chapter 13 debtor.

Despite having consented to his attorney's motion to withdraw, on May 30, 2013, Mr. Wynn filed a notice of appeal with respect to the Order granting the motion to withdraw. (ECF No. 50).[1] While that appeal was pending, Mr. Wynn filed an amended Chapter 13 plan. (ECF No. 109). That amended plan sought to reduce the monthly plan payment to $500, to free up money to be used to repair and sell the Elmdorf Avenue and Lake Avenue properties. (*Id.*). The Trustee recommended that the amended plan not be confirmed for a variety of reasons. (ECF No. 114). In response, Mr. Wynn filed a second amended plan. (ECF No. 123). The second amended plan provided for a reduced monthly payment of $500 and continued to require the sale of two pieces of real estate—now by January 2017—with the net proceeds to be paid to the Chapter 13 Trustee. *(Id.)*. The Trustee recommended confirmation of the second amended plan. (ECF No. 124). The Court confirmed the second amended plan, after holding a confirmation hearing. (ECF Nos. 126, 136). As a result, Mr. Wynn was obligated to pay the Trustee $500 a month (which he did) and turn over the net proceeds from a sale of the Elmdorf Avenue and Lake Avenue properties by January 6, 2017 (which he did not). (ECF No. 136). The tax liens against the properties remain unsatisfied and continue to accrue interest at a statutory rate of 18% annually.

The docket reflects the tremendous volume of litigation and case-related proceedings involving Mr. Wynn over the four years since the filing of this case. Critically, however, Mr. Wynn failed to sell either the Elmdorf Avenue or Lake Avenue properties by January 6, 2017. In

---

[1] The District Court entered an Order affirming this Court's decision. (ECF Nos. 139, 140). Mr. Wynn took an appeal to the Second Circuit. (ECF No. 141). That appeal was dismissed by the Second Circuit by Mandate. (ECF No. 148).

fact, as of that date, Mr. Wynn had not listed either property for sale. The Trustee moved to dismiss the case under 11 U.S.C. § 1307(c)(1), alleging unreasonable delay by Mr. Wynn that was prejudicial to creditors. (ECF No. 227). The holders of tax liens on the Elmdorf Avenue and Lake Avenue properties joined in support of the Trustee's motion to dismiss. (ECF Nos. 257, 258). In response, Mr. Wynn cross-moved to further modify the confirmed plan—more accurately, to suggest how and why he would seek modification, without actually filing a motion under 11 U.S.C. § 1329(a). (ECF Nos. 230, 231, 232).[2] Mr. Wynn repeatedly admitted that "[m]y mental and physical health will not allow me to represent myself anymore." (ECF No. 230 ¶ 2; *see also* ECF No. 273 ¶ 9; ECF No. 280 ¶ 5; ECF No. 281 at 4). And Mr. Wynn's submissions bear out his claim that his physical and mental condition are adversely affecting his ability to effectively serve as a *pro se* debtor-in-possession.

Because of Mr. Wynn's scheduled knee surgery, together with his apparent recent retention of new counsel, the Court granted Mr. Wynn an adjournment of the Trustee's motion to dismiss until June 1, 2017. (ECF Nos. 232, 233). On April 28, 2017, Mr. Wynn's new attorney filed Form 2016B, disclosing compensation as required by Rule 2016(b) FRBP. (ECF No. 240). But, on May 4, 2017, counsel filed a motion to withdraw. (ECF No. 241). The motion indicated that Mr. Wynn refused to follow counsel's recommendation for the modification of his confirmed plan, in a manner that counsel believed would allow for the successful completion of the Chapter 13 plan. (*Id.* ¶ 6). Mr. Wynn consented to withdrawal by counsel. (*Id.*). Once again, Mr. Wynn proceeded *pro se*.

---

[2] The document filed by Mr. Wynn was submitted in response to and in opposition to the Trustee's motion to dismiss. (ECF No. 230). Because that filing also requested a six-month extension of time to sell the real properties, the submission was also entered on the docket as a cross-motion. (ECF No. 231).

6

Shortly after, on May 16, 2017, Mr. Wynn filed another cross-motion, requesting a further adjournment—to June 15, 2017—of the Trustee's motion to dismiss. (ECF No. 245). The cross-motion additionally sought approval of a contract for sale of the Elmdorf Avenue property. (*Id.*). Importantly, Mr. Wynn also demanded that the tax liens held by Cheswold and Tower be expunged because those secured creditors did not file proofs of claim. (*See id.* ¶¶ 15, 18). As Mr. Wynn saw it, he should not be required to satisfy tax liens on the Elmdorf Avenue property in connection with the proposed sale (because no proofs of claim were filed), and he should not be required to pay the 18% statutory rate of interest on those liens (because he did not agree to pay that rate of interest).[3] (*See id.*). For the first time, Mr. Wynn provided a copy of a purchase and sale contract for the Elmdorf Avenue property that had been negotiated in March 2017. (*Id.*, Ex. E). The purchase price agreed on by the parties was $87,500. (*Id.*). The contract was contingent and raised some concerns. First, the closing was set to take place on or before April 30, 2017—a date that had passed nearly three weeks before Mr. Wynn sought approval of the contract—raising a concern about whether the contract was still in existence. (*See id.* ¶ 7). Second, the contract obligated Mr. Wynn to "convey good and marketable title to the property . . . free and clear of all liens and encumbrances." (*Id.* ¶ 11). Mr. Wynn then filed a further submission echoing his cross-motion, requesting that the tax liens against the Elmdorf Avenue property be voided by the Court because the lienholders had not filed proofs of claim. (ECF Nos. 255, 256).

Cheswold and Tower objected to Mr. Wynn's cross-motion on the grounds that, in seeking approval of the sale contract, Mr. Wynn also sought to extinguish the tax liens on the property, without any legal basis to do so. (ECF Nos. 257, 258). The creditors objected to approval of the

---

[3] Neither federal nor state law support Mr. Wynn's contentions, and Mr. Wynn could point to no authority for support—choosing instead to insist that a criminal conspiracy was afoot.

sale contract for that reason. The creditors also supported the Trustee's motion to dismiss because Mr. Wynn has continued to accumulate post-petition real estate tax liabilities on the properties he was required to sell under the terms of his confirmed plan. (ECF Nos. 257, 258).

The Court held a hearing on the Trustee's motion and Mr. Wynn's cross-motion on June 15, 2017. At the hearing, the Court indicated that the contract for sale could not be approved on the terms demanded by Mr. Wynn—namely, a sale in which the tax liens (apparently valid) would be extinguished without full payment. (ECF No. 261). The Court also requested that Mr. Wynn obtain an extension of time on the contract from the buyer, to confirm that the contract was still viable. The Court urged Mr. Wynn to meet with his real estate attorney to determine the manner in which sale proceeds would be distributed to discharge liens against the property and to pay closing costs. Mr. Wynn was cautioned against persisting in his objection to payment of tax liens (based on the absence of proofs of claim), as Mr. Wynn's flawed legal argument was a significant factor preventing approval of the sale contract *on the terms imposed by Mr. Wynn*. The Court also asked that the Chapter 13 Trustee obtain a proposed closing statement from Mr. Wynn's real estate attorney for the sale of the Elmdorf Avenue property. At the Court's request, Cheswold and Tower filed supplements to their earlier submissions—providing proof of the fact that they were the proper owners of the tax liens on Mr. Wynn's properties, the legal basis for the accrual of 18% interest on those tax liens, and the pay-off amounts. (ECF Nos. 265, 266).

The next day, Mr. Wynn filed a further objection to the Trustee's motion and further demand that the Court approve the sale of the Elmdorf Avenue property, free and clear of tax liens. (ECF No. 267). Rather than providing any proof to support his claim that he had paid certain of the taxes—a claim belied by his own exhibits—Mr. Wynn doubled down on his assertion that the entire case has been a calculated, racially motivated conspiracy to deprive him of title to his real

8

estate holdings. (*Id.*). While complaining that the Court is foot-dragging as part of a conspiracy aimed at causing his sale contract to fail, Mr. Wynn persisted in demanding that the sale of the Elmdorf Avenue property be approved, with tax liens being expunged and unpaid. (*Id.*).

A hearing on the competing motions was scheduled for July 20, 2017. Shortly before the date of the hearing, Mr. Wynn filed an amended motion seeking approval of the sale of the Elmdorf Avenue property, applying for an extension of time to sell the Lake Avenue property, requesting a change of venue, and demanding that the Chapter 13 Trustee recuse himself. (ECF No. 273). Mr. Wynn persisted in his demand that the sale of the Elmdorf Avenue property be approved free and clear of tax liens (but with no legal basis to do so). (*Id.* ¶¶ 3-8). And, Mr. Wynn again stated that he "is 77 years of age and has health issues and does not have the mental capacity to deal with this." (*Id.* ¶ 9).

The Trustee's motion requested only dismissal—conversion to Chapter 7 was not mentioned. (ECF No. 227). To ensure that all parties had notice and an opportunity to be heard on the issue of *conversion* (as well as dismissal), on July 19, 2017, the Court issued an Order to Show Cause advising the parties that it would consider both conversion and dismissal of this case, under 11 U.S.C. §1307(c). (ECF No. 274). Because Mr. Wynn had advised the Court that he did not have email, the Court requested that, as a courtesy, the Clerk's Office contact him by telephone to inform him of the new hearing date. Upon being informed that Mr. Wynn did not answer his phone and that his voicemail was not accepting messages (it was full), the Court requested that the Clerk's Office attempt to contact Jeffrey S. Wynn—who happens to be both Mr. Wynn's son and (critically) *the realtor identified in both the Elmdorf Avenue and Lake Avenue purchase and sale contracts as representing Mr. Wynn.* (ECF No. 272, Ex. B, "Administrative Information Form"). The Clerk's Office was able to reach Jeffrey Wynn to request that he contact his client to inform

9

him of the adjourned hearing date and to request that he appear (as the seller's realtor) to assist his client in seeking approval of the contingent sale contracts. In one of his latest submissions, Mr. Wynn alleges that the courtesy extended to him by the Clerk's Office "is illegal and it violates debtor and his son's constitutional rights and due process, to request that debtor's son attend the court hearing with debtor, his father." (ECF No. 280 ¶ 5).

On July 27, 2017, a hearing was held on the Order to Show Cause, the motion to dismiss, and the cross-motions by Mr. Wynn seeking approval of the sale of the Elmdorf Avenue property free and clear of tax liens (and collateral relief). During the hearing, Mr. Wynn persisted in his claims that the Chapter 13 case was a conspiracy orchestrated to take his real estate from him. And Mr. Wynn persisted in demanding that the Court approve his proposed sale of the Elmdorf Avenue property, without satisfaction of the tax liens on the property—as required by the sale contract and the Bankruptcy Code. Mr. Wynn gave no indication that he is capable of handling the business matters necessary to conclude his Chapter 13 plan, in a manner permitted by the Code. He also gave no indication that he has the ability to satisfy the contingencies under either sale contract or to ensure that those contracts do not lapse. The Court is left with the firm impression that Mr. Wynn's contorted view of reality is an immovable impediment that is preventing these contracts from being completed.

### III.

### CONCLUSIONS OF LAW

This case was filed by Mr. Wynn to stop a foreclosure against his real property and to pay off accumulated tax claims, while maximizing the value of the real estate through marketing and sale. The confirmed Chapter 13 plan gave Mr. Wynn three years from confirmation to sell the Elmdorf Avenue and Lake Avenue properties—a period of time requested by Mr. Wynn that would

10

Case 2-13-20304-PRW, Doc 286, Filed 07/27/17, Entered 07/27/17 15:20:41, Description: Main Document , Page 10 of 16

afford him time to repair the properties, secure certificates of occupancy, and market them for sale. But neither property was sold by January 2017, nor was either property listed for sale by that time. As a result, the Trustee and secured creditors requested dismissal of this case for unreasonable delay by Mr. Wynn in performing under his Chapter 13 plan, asserting that delay has been prejudicial, under 11 U.S.C. § 1307(c)(1).

Time and time again, Mr. Wynn has shown that he is either incapable of or unwilling to perform the terms of his Chapter 13 plan in a manner permitted by the Code. In proceeding *pro se*, Mr. Wynn has become his own worst enemy. Responding to the Trustee's motion to dismiss, Mr. Wynn claims that he "was not aware that my properties had to be sold by January 6, 2017." (ECF No. 230 ¶ 4). But Mr. Wynn has appeared before this Court numerous times since this case was filed, and there have been many discussions with him about the need for him to timely sell the properties as a condition of his confirmed plan. It is simply not possible that he didn't know he had to sell these properties by a date certain. Mr. Wynn, an elderly gentleman, has repeatedly admitted that he lacks the physical and mental capacity to handle this case without an attorney. (*See* ECF No. 230 ¶ 2; ECF No. 273 ¶ 9; ECF No. 280 ¶ 5; ECF No. 281 at 4). It is of particular concern to the Court that Mr. Wynn, as a *pro se* Chapter 13 debtor-in-possession—with a "sale plan" to perform—appears to lack the mental capacity to meet his obligations under the Code.

According to the schedules filed by Mr. Wynn, and the dozens of subsequent filings in this case, there appears to be equity in both pieces of real estate beyond liens and encumbrances. However, in one of his most recent submissions, Mr. Wynn now claims that the real estate is worth considerably less than originally claimed. (ECF No. 280). Accepting Mr. Wynn's contention leads to the conclusion that the equity cushion is thin—and rapidly eroding. Any surplus equity would belong to Mr. Wynn, after payment of claims in the order of priority established by the

11

Code. However, with each passing month, the amount needed to satisfy tax liens increases, and the amount of potential surplus equity for Mr. Wynn decreases. Not only are creditors being harmed by Mr. Wynn's delay in bringing about an approvable sale, but Mr. Wynn is also being harmed by his own obstructionist actions.

To be clear, Mr. Wynn is not trying to prevent the sale of the real estate. He wants both properties sold. The problem is that Mr. Wynn requests that the Court approve the sale free and clear of liens, in a manner not permitted under 11 U.S.C. § 363(f). To further complicate matters, both contracts are contingent and impose obligations on both parties. As seller, Mr. Wynn's approach guarantees that he will breach his obligation to convey marketable title, if the contracts even get to closing. In the interim, there are other time-sensitive contingencies (inspections and attorney approvals, to name two) that have already passed without proof of compliance. (*See* ECF No. 245, Ex. E; ECF No. 281, Ex. A). Allowing Mr. Wynn to continue to exercise rights under 11 U.S.C. § 1303, given his proven inability to do so, is no longer in the best interest of the creditors, the Estate, or Mr. Wynn.

Under 11 U.S.C. § 1307(c), the Court has the discretion to dismiss a Chapter 13 case, or convert it to a Chapter 7 proceeding, "for cause," including (but not limited to) the factors identified in 11 U.S.C. § 1307(c)(1) through (c)(11). If the Court finds cause, it is to determine whether dismissal or conversion to Chapter 7 would best serve the interests of creditors and the Estate. 11 U.S.C. § 1307(c). Here, the first question to be answered is whether cause exists to warrant dismissal or conversion. On the substantial record before the Court, and after having had many opportunities to assess Mr. Wynn's inability to perform the duties and obligations of a Chapter 13 debtor-in-possession, the Court finds cause exists to convert or dismiss this case on several grounds.

First, under 11 U.S.C. § 1307(c)(6), Mr. Wynn has materially defaulted with respect to a term of his confirmed plan. The confirmed plan is a "sale plan," under which Mr. Wynn was to sell the Elmdorf Avenue and Lake Avenue properties within three years of confirmation.[4] The purpose of that three-year term was to afford Mr. Wynn time to make the properties ready for sale, to maximize their value. But, as of January 6, 2017, Mr. Wynn had not even listed the properties for sale. Further, in response to the Trustee's motion to dismiss, Mr. Wynn indicated that the Lake Avenue property required substantial repairs (without which a certificate of occupancy could not be obtained)—despite his plan payment having been reduced from $2,000 to $500 a month to enable him to make necessary repairs. In his cross-motion to modify his confirmed plan, Mr. Wynn seeks an extension of time to sell the Lake Avenue property and approval of the sale of the Elmdorf Avenue property, with tax liens extinguished (but not paid). The delay in selling the property has resulted in the accumulation of substantial interest on the tax liens, chipping away at the potential equity in both properties. Mr. Wynn's default is material because the lynchpin term of his confirmed plan was a sale of both properties within three years. The Court finds that cause to convert or dismiss exists under 11 U.S.C. § 1307(c)(6).

Second, the Court finds that cause exists to convert or dismiss, under 11 U.S.C. § 1307(c)(1), for unreasonable delay by Mr. Wynn that is prejudicial to creditors. This Chapter 13 case was filed to prevent the holders of tax liens from foreclosing against Mr. Wynn's Lake Avenue property. The unpaid taxes giving rise to those liens date back to 2008 (and include 2009, 2010, 2011, and 2012). Nearly ten years later, those tax liens remain unpaid. Mr. Wynn was to pay those liens—and his other creditors—from the proceeds of the sale of the Lake Avenue and

---

[4] Because it took over a year for Mr. Wynn to have his plan confirmed, he has actually had over four years to sell the properties.

Elmdorf Avenue properties, by January 2017. Yet the Lake Avenue property still requires extensive repairs. Mr. Wynn has not made the repairs and has shown no ability to do so timely. And, while Mr. Wynn has come forward with proposed sale contracts for the Elmdorf Avenue and Lake Avenue properties, those contracts cannot be approved because of the terms imposed by Mr. Wynn—namely, that the sales be allowed to proceed without satisfaction of tax liens. Not only is Mr. Wynn's approach contrary to 11 U.S.C. § 363(f) and the terms of his confirmed plan, it is also contrary to an express contractual obligation he has under the sale contract. (*See* ECF No. 245, Ex. E ¶ 11). Mr. Wynn is the cause of the delay in selling the real estate. The delay is unreasonable. The unreasonable delay is prejudicial to creditors because of the rapidly eroding equity cushion that Mr. Wynn admits has occurred. (*See* ECF No. 280). The Court finds that cause to convert or dismiss exists under 11 U.S.C. § 1307(c)(1).

Finally, cause to convert or dismiss can be found—generally—based on Mr. Wynn's inability to act effectively as a *pro se* Chapter 13 debtor-in-possession under 11 U.S.C. § 1303. This is rooted in the fact that Mr. Wynn appears to lack the mental capacity to understand and operate within the constraints of the Bankruptcy Code. Mr. Wynn has repeatedly acknowledged his lack of physical and mental capacity to continue as a *pro se* debtor in multiple filings. (*See* ECF No. 230 ¶ 2; ECF No. 273 ¶ 9; ECF No. 280 ¶ 5; ECF No. 281 at 4). The Court has had numerous opportunities to assess Mr. Wynn's cognitive skills and his overall ability to understand the bankruptcy process. He has, since just days after filing this case, persisted in his claim that he is the target of a racially motivated conspiracy, designed to deprive him of his real estate. That view—which appears to the Court to be delusional—likely caused the withdrawal of two experienced attorneys who attempted to represent Mr. Wynn in this case. Both attorneys also noted that Mr. Wynn refused to take their legal advice. Even a cursory reading of Mr. Wynn's

14

many submissions demonstrates that Mr. Wynn's beliefs are so firmly held, but lacking in a foundation rooted in reality, that it is highly unlikely he could ever change his focus and move this case forward. The Court finds that Mr. Wynn's demonstrated inability to act effectively as a *pro se* debtor, coupled with his repeated admissions concerning his declining physical and mental capacity, is additional cause under 11 U.S.C. § 1307(c).

Having found cause to convert or dismiss this case, the Court must determine which outcome will best serve the interests of creditors and the Estate. The real estate owned by Mr. Wynn appears to have equity after payment of liens and encumbrances. That surplus equity would almost certainly be lost if the case was dismissed and the properties were foreclosed for taxes. During the hearing, the secured lien holder creditors urged the Court to convert the case and not dismiss it for that very reason. Dismissal would economically disadvantage unsecured creditors, the Estate, and Mr. Wynn—allowing recovery by only the holders of tax liens. A disinterested Chapter 7 Trustee would be in the best position to bring about an arm's length sale of the real property, maximizing its value for all creditors and the Estate, or to determine that the property should be abandoned. *See Bulmer v. Bulmer*, No. WDQ-13-1578, 2014 U.S. Dist. LEXIS 26350, at *27 (D. Md. Feb. 28, 2014); *In re Groggins*, No. 14-71033, 2015 Bankr. LEXIS 2064, at *8-9 (Bankr. W.D. Va. June 24, 2015); *In re Jensen*, 425 B.R. 105, 111 (Bankr. S.D.N.Y. 2010). An independent Chapter 7 Trustee could also determine whether to object to claims and do so on a legally supported basis. The Court finds, in the exercise of its discretion, that conversion of this case to a Chapter 7 proceeding is in the best interest of creditors, the Estate, and Mr. Wynn. The case is hereby **CONVERTED** for cause under 11 U.S.C. § 1307(c), (c)(1), and (c)(6).

## IV.

## CONCLUSION

This case is **CONVERTED** to a Chapter 7 proceeding, for cause under 11 U.S.C. § 1307(c)(1), (c)(6), and for cause generally under 11 U.S.C. § 1307(c), because Mr. Wynn has demonstrated an inability both to comply with the terms of his confirmed plan and to effectively carry out the duties required of a debtor-in-possession under Chapter 13 of the Code. The various cross-motions of Mr. Wynn are **DENIED** in all respects. The Chapter 13 Trustee's request that the Court prohibit Mr. Wynn from filing further documents without leave of the Court is **DENIED**. The United States Trustee is directed to appoint a Chapter 7 Trustee promptly, so that the sale of these real estate assets can be pursued in an effective manner.

**IT IS SO ORDERED.**


DATED: July 27, 2017 _____/s/_____
      Rochester, New York       HON. PAUL R. WARREN
                                              United States Bankruptcy Judge